UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
SEP - 9 2021
AT _____ O'CLOCK
John M. Domurad, Clerk - Syracuse

| | |
|---|---|
| SARA GABRIELLA KIELLY,    (Plaintiff); | |
| vs. | Civ. Act.#: 9:21-CV-998(LEK/ML) |
| SEAN B. VIRKLER - NYS ASST. A.G. (UTICA), BETSY FORTINO - SUP. ATTY. MHLS, and LAWRENCE F. SHEETS - SENIOR ATTY. MHLS; in their individual capacities, (Defendants). | Judges: (____) / (____)  **COMPLAINT**  *BENCH TRIAL REQUESTED* |

Plaintiff, Sara Gabriella Kielly (hereafter referred to as: "Plaintiff" or "Miss. Kielly"), by and for herself pro se, as and for her complaint against Defendants: NYS Assistant Attorney General Sean B. Virkler, Mental Hygiene Legal Services Supervising Attorney Betsy Fortino, and Mental Hygiene Legal Services Senior Attorney Lawrence F. Sheets respectfully alleges the following:

### JURISDICTION AND VENUE

1.) The Court has jurisdiction over this action under 28 USC § 1331 & 1343(a)&(b). The matters in controversy arise under 48 USC § 1983.

2.) Venue properly lies in this district persuant to 28 USC § 1391(b)(2), because the primary events giving rise to the causes of action occured at Central New York Psychiatric Center (hereafter referred to as: "CNYPC") located in the city of Marcy, in the county of: Oneida, and the state of: New York - of which is located within the Northern District of New York.

### PARTIES

3.) Plaintiff, Sara Gabriella Kielly, is and was at all times relevant hereto was confined in the custody of the New York State Office of Mental Health (hereafter referred to as: "NYSOMH") under an involuntary psychiatric commitment persuant to NY Correction Law §402(9), and/or a prisoner confined in the New York State Department of Corrections and Community Supervision (hereafter referred to as: "DOCCS"), respectively. At all times relevant hereto, while Plaintiff was a patient in the custody of NYSOMH, Plaintiff was confined at CNYPC, and at all times

relevant hereto while Plaintiff was incarcerated in the custody of DOCCS, Plaintiff was incarcerated at Five Points Correctional Facility (hereafter referred to as: "Five Points") or Attica Correctional Facility (hereafter referred to as: "Attica"). Plaintiff is presently incarcerated in the custody of DOCCS at Attica.

4.) Defendant Sean B. Virkler (hereafter referred to as: "Defendant Virkler") was at all times relevant hereto an "assistant attorney general" employed or retained by the New York State Attorney General's Office. In this position Defendant Virkler was the attorney assigned to represent the respondents named in Plaintiff's CPLR Article 70 (Habeas Corpus) action, and was therefore not acting as a "prosecutor" during the times relevant herein.

5.) Defendant Betsy Fortino (hereafter referred to as: "Defendant Fortino") was at all relevant times hereto the "supervising attorney-in-charge" employed or retained by the New York State Mental Hygiene Legal Services: Fourth (4th) Department (hereafter referred to as: "MHLS"), in the Utica Regional Office. In this position Defendant Fortino was responsible for operating and supervising the MHLS Utica Regional Office, and was directly involved in representing Plaintiff in her Habeas Corpus proceeding persuant to court order by Honorable Oneida County Supreme Court Justice Erin P. Gall (hereafter referred to as: "Justice Gall") appointing MHLS to represent Plaintiff in said action.

6.) Defendant Lawrence F. Sheets (hereafter referred to as: "Defendant Sheets") was at all times relevant hereto a "senior attorney" employed or retained by MHLS, in the Utica Regional Office. In this position Defendant Sheets was responsible for representing the clients, and legal cases, assigned to his case load. Defendant Sheets was directly involved in representing Plaintiff, along with Defendant Fortino, persuant to a court order by Justice Gall appointing MHLS to represent Plaintiff

in Plaintiff's Habeas Corpus action.

## PREVIOUS LAWSUITS

7.) Plaintiff has filed no other actions relating to the same facts in this action.

8.) Plaintiff has filed other actions generally relating to her incarceration, and prison conditions, but that do not raise the same or similar facts as this complaint.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.) Plaintiff has exhausted all available administrative remedies.

10.) Plaintiff has not been assessed three (3) or more "strikes" for the purposes of the P.L.R.A.: 28 USC § 1915(g).

## RELEVANT FACTS

11.) Plaintiff is a transgender woman suffering from severe "prominent anatomical gender dysphoria", whom was confined as a patient at CNYPC - a NYSOMH psychiatric hospital, between approximately: June 15, 2018 to September 12, 2018.

12.) Plaintiff was committed to the forensic inpatient unit of CNYPC during the above-mentioned dates persuant to a "two physician emergency psychiatric commitment" persuant to: NY Correction Law §402(9), and by a court ordered mental health commitment by Oneida County Superior Court Justice Honorable Louis P. Gigliotti.
(See: Exhibit A - Court Commitment Order.)

13.) Emergency, and involuntary, commitment of Plaintiff to the NYSOMH at CNYPC was due to Plaintiff's attempt to castrate herself on June 6, 2018 at Five Points - of which caused Plaintiff to suffer life-threatening blood loss, traumatic and hemorrhagic shock, life-threatening sepsis infection, and the radical emergency orchiectomy (testicle amputation) of Plaintiff's right testicle and hemascrotum.

14.) Upon information and belief, the defendants were aware of multiple instances prior to September 2018 where Plaintiff had decompensated psychiatrically, and engaged in heinous and life-threatening self-harming behaviors due to DOCCS' inability, and refusal, to properly treat Plaintiff's Gender Dysphoria and to protect Plaintiff from self-destruction and suicide attempts.
(See: Exhibit B - Comprehensive Suicide Risk Assessment Form.)

15.) It must be noted that this complaint, and the causes of action raised herein, are not made in relation to DOCCS' conduct relating to treatment of Plaintiff's Gender Dysphoria or other serious medical needs, nor directly in relation to the June 6, 2018 castration incident.

16.) While confined at CNYPC Plaintiff was discharged from the care, custody, and control of DOCCS.

17.) While at CNYPC Plaintiff filed an instant action persuant to NYS CPLR Article 70 (hereafter referred to as: "Habeas Corpus") in the Oneida County Supreme Court in approximately August 2018.
[See Generally: "Kielly v. Laurine Jones, et al." - Index #: CA2018-2353]
[Oneida County Supreme Court, SCJ. Erin P. Gall.                             ]

18.) On approximately August 16, 2018, Justice Gall entered an order in "Kielly v. Jones, et al." (hereafter referred to as: "Plaintiff's Habeas Action") ordering the following:

    a.) Plaintiff's motion to proceed as a "poor person" was GRANTED;

    b.) MHLS was APPOINTED to represent Plaintiff in Plaintiff's Habeas Corpus Action;

    c.) PLaintiff was remain at CNYPC, and was not to be returned to the custody of DOCCS, until further order of the Court at the resolution of Plaintiff's Habeas Corpus Action.

19.) Justice Gall's order directing that Plaintiff was to remain in the care, custody, and control of the NYSOMH at CNYPC, and **not** returned to the care, custody, and control of DOCCS, until further order of the Court was a clear, and unequivocable, mandate by a Court of proper jurisdiction - persuant to NY CPLR §7009(3)(e).

20.) On approximately September 10, 2018, upon information and belief, Justice Gall held a court conference with the Defendants with the Court's attorney: Ms. Colleen Keene, present - in relation to, and to dicuss, the August 16, 2018 order by Justice Gall, and the custody mandate in Plaintiff's Habeas Corpus Action.

~~[redacted]~~

21.) During the September 10, 2018 court confrence with Defendants, upon information and belief, Justice Gall verbally reaffirmed her lawful mandate that Plaintiff was to remain in the care, custody, and control of the NYSOMH at CNYPC, and **not** under any circumstance to be returned to the care, custody, or control of DOCCS until further order of the Court at the resolution of the Plaintiff's Habeas Corpus Action.

~~[redacted]~~

22.) During the September 10, 2018 court confrence with Defendants in relation to Plaintiff's Habeas Corpus Action, upon information and belief, Defendants all expressed understanding of Justice Gall's custody order that amounted effectively to a "prisoner release order" persuant to NY CPLR §7009(3)(e), and agreed to comply with the custody order persuant to the Court's lawful mandate.

~~[redacted]~~

23.) Upon information and belief, Justice Gall directed the Defendants to advise the necessary administrative officials at CNYPC about the Court's custody order in Plaintiff's Habeas Corpus Action, and ensure

that the Court's custody mandate was complied with.

~~[redacted]~~

24.) Upon information and belief, Defendants knowingly failed to comply with Justice Gall's lawful orders, and mandates, failing to properly notify the NYSOMH, nor the administration of CNYPC, of the Court's order forbidding the discharge of Plaintiff from CNYPC and forbidding Plaintiff to be in the care, custody, or control of DOCCS until further order of the Court.

~~[redacted]~~
~~[redacted]~~

25.) On approximately September 12, 2018 in contravention, and contempt, of the August 16, 2018 lawful order of Justice Gall, Plaintiff was discharged as a patient from CNYPC, and transferred back to the care, custody, and control of DOCCS. Plaintiff was therefore transported by DOCCS from CNYPC to Attica, and placed in a prison cell.

~~[redacted]~~

26.) Upon being placed in a prison cell at Attica Plaintiff was confined to an approximately six (6) foot by ten (10) foot cell with metal walls, a concrete floor, and metal bars with only one pair of clothing (green state issued button-up shirt, t-shirt, underwear, socks, and boots) and no personal property.

    a.) From approximately September 12, 2018 to September 13, 2018 Plaintiff was placed in the Attica Mental Health Unit (hereafter referred to as: "MHU") persuant to DOCCS policy regarding prisoners being transferred from CNYPC back to DOCCS;

    b.) Between approximately September 13, 2018 to September 27, 2018 Plaintiff was confined to Attica: A-Block, Three (3) gallery, twenty-six (26) cell - under "keeplock confinement" due to

"quarantine" and "protective custody investigation";

   i.) Due to being "keeplock" status, Plaintiff was confined to her cell twenty-four (24) hours a day, with minimal contact with other individuals, no programming, and no access to phone or recreation.

c.) On approximately September 27, 2018 Plaintiff was moved from A-Block, 3 Gallery, 26 cell to B-Block, twenty-four (24) gallery, three (3) cell in the "protective custody" (hereafter referred to as: "P.C.") unit.

d.) On approximately September 27, 2018 while cleaning her P.C. unit cell (B-24-3), Plaintiff suffered the rupture of her healing castration / surgical wound requiring transport to an outside hospital (Erie County Medical Center - Buffalo, New York) for emergency treatment and care.

   i.) Upon returning to Attica from the outside hospital, Plaintiff was placed in an Attica infirmary cell.

e.) On approximately September 28, 2018 suffered an emotional, and psychiatric, decompensation in her Attica infirmary cell due to her distress over having been discharged from CNYPC unlawfully, and "inserted a plastic spork handle into her penis to approximately the "proximal point".

   i.) Due to this self-harm event Plaintiff had to be transported back to the outside hospital (Erie County Medical Center) for emergency treatment to remove the deeply lodged plastic spork from deep within her penis and urethra;

   ii.) Plaintiff suffered severe pain, and emotional distress, due to the plastic spork being lodged deep within her urethra;

   iii.) Plaintiff suffered bleeding from her urethra, and penis, due to the deeply lodged plastic spork within her urethra;

    iv.) Plaintiff underwent excessively painful emergency treatment at the outside hospital to remove the plastic spork from within her urethra - this involved a urologist inserted a rigid metal long medical tweezers / hemastat into Plaintiff's penis, and urethra to manually extract the broken plastic spork from Plaintiff's urethra at approximately the "proximal point";

        1.) This emergency room p½rocedure was completed without pain medication or anesthesia, and caused bleeding and severe pain from Plaintiff's penis and urethra.

f.) Upon being returned to Attica on approximately September 29, 2018 Plaintiff was placed in a infirmary "suicide cell" with only a "suicide smock" until approximately October 1, 2018;

g.) On approximately October 1, 2018 Plaintiff was transferred back to her P.C. unit cell (B-24-3);

h.) On approximately October 2, 2018 Plaintiff was transferred from Attica to Auburn Correctional Facility persuant to an "order to produce" Plaintiff before Justice Gall scheduled for October 4, 2018;

    i.) Upon arriving at Auburn Correctional Facility (hereafter referred to as: "Auburn"), Plaintiff was immediately placed in the "special housing unit" in "administrative segregation" (a confinement status more commonly referred to as: "solitary confinement") in Auburn Special Housing Unit, Upper Floor, three (3) cell, and remained there with no access to phone, shower, or recreation from approximately October 2, 2018 to October 4, 2018 in total solitary confinement;

i.) On approximately October 4, 2018 Plaintiff was transported by DOCCS to the Oneida County Supreme Court to appear before Justice Gall pursuant to an "order to produce" issued by Justice Gall in response to the Court becoming aware of Plaintiff having been

unlawfully discharged from CNYPC, and returned to DOCCS custody. (See: Exhibit C - DOCCS Cell Locator Register.)

27.) On approximately October 4, 2018 after a full hearing, Justice Gall entered ruled that Plaintiff had been unlawfully discharged from CNYPC and returned to DOCCS' custody in contravention of her AUgust 16, 2018 order.

28.) Persuant to Justice Gall's finding that Plaintiff was unlawfully removed from CNYPC, and NYSOMH custody, and that Plaintiff was unlawfully incarcerated in the custody of DOCCS - Justice Gall entered a contempt order against the defendants.



29.) In the same order that Justice Gall entered the contempt finding against the Defendants, Justice Gall also ordered that Plaintiff was to be forthwith returned to inpatient care in the custody of the NYSOMH at CNYPC, and was not to be under any circumstance returned or brought back to a DOCCS facility or DOCCS' care, custody, or control until otherwise ordered by the Court.



30.) On approximately October 4, 2018 Plaintiff was transported directly from the Oneida County Supreme Court to CNYPC, and remained at CNYPC until approximately February 18, 2020 upon final resolution, and disposition, disposition, of Plaintiff's Habeas Corpus Action.

31.) On approximately November 15, 2018 a contempt hearing was held in the Oneida County Supreme Court before Justice Gall.



32.) On approximately January 29, 2019 Justice Gall entered her judicial ruling, and order, in relation to the November 15, 2018 contempt (willfulness) hearing, finding the following:

a.) That the Defendants had "constructive notice" of the August 16, 2018 custody order;

b.) The August 16, 2018 custody order was discussed at the September 10, 2018 court confrence with the defendants in attendance;

c.) That regardless of if the defendants rejected "the basis for the order" they had a legal duty to follow, and comply with, it;

d.) The defendants violated the August 16, 2018 custody order when they transferred, or allowed for the Plaintiff to be transferred, Plaintiff from CNYPC to Attica;

e.) That Plaintiff "was prejudiced" as a result of being unlawfully returned to DOCCS custody, and incarcerated at Attica;

33.) Justice Gall found the defendants in contempt of the Oneida County Supreme Court, and Justice Gall's August 16, 2018 custody order.

34.) Justice Gall also found in her January 29, 2019 order that the defendants all individually had a duty to communicate the intent of the Court's August 16, 2018 order to the appropriate powers, particularly, the Court wrote, given the substance of the conference held on September 10, 2018 with all the defendants present.

35.) Plaintiff suffered the following physical harm, and injury, due to the Defendant's unlawful, and unconsitutional, conduct:

a.) Severe pain from the rupture of Plaintiff's healing castration / surgical wound while cleaning her Attica prison cell on approximately September 27, 2018;

b.) significant bleeding from Plaintiff's suffering a rupture of her healing castration / surgical wound on September 27, 2018;

c.) Bruising and extended pain of Plaintiff's scrotal, perianal, and groin areas due to the rupture of Plaintiff's healing castration / surgical wound on September 27, 2018;

d.) Severe pain from the insertion of a broken plastic spork into Plaintiff's penis, and urethra;

e.) Bleeding from Plaintiff's penis and urethra due to the broken plastic spork lodging deep within Plaintiff's urethra;

f.) Bleeding and severe pain due to the manual removal of the broken plastic spork from deep within Plaintiff's urethra by a outside hospital emergency room urologist, with rigid metal "tweezers / hemastat" without anesthesia or pain medication;

g.) Further physical pain, and suffering, suffered by Plaintiff:

    i.) Nausea; ii.) Fast, painful heart-rate; iii.) vomiting;

    iv.) severe migraine headaches.

36.) Plaintiff suffered the following extreme emotional distress, and psychological pain and suffering, due to the Defendant's unlawful, and unconstitutional conduct:

    a.) loss of appetite; b.) suicidal ideations; self-harm ideations;

    c.) hyperventilation; d.) increased fear; e.) increased depression;

    f.) increased castration ideations; g.) anxiety and panic attacks;

    h.) severely increased hopelessness.

37.) Plaintiff was forced to live in bare prison cells with no personal property, and one set of filthy state-issued clothing (ie: button-up shirt, t-shirt, underwear, socks, pants) - for twenty-three (23) days between approximately: September 12, 2018 to October 4, 2018.

38.) Plaintiff was provided no access to a shower, or hygiene supplies (ie: deoderant, soap, shampoo, toothpaste, toothbrush, hot water, ability and to shave or have haircuts) for twenty-three (23) days from: September 12, 2018 to October 4, 2018.

39.) Plaintiff was denied access to a phone or writing materials (ie: pen, pencil, paper, stamps, or envelopes) to communicate with outside support systems (ie: family, friends, legal advocates, etc) for twenty-three (23) days between approxiamtely: September 12, 2018 to October 5, 2018.

40.) Plaintiff was denied any form of recreation or time out of her cell, even though she was not subject to any disciplinary sanctions or confined in a special housing unit, for atleast twenty-three (23) days from September 12, 2018 to October 4, 2018. This included to access or ability to excerise or work-out.

41.) Plaintiff had access to no personal food (ie: package or commissary food items), and recieved minimal amounts of food in her facility meal trays.

42.) Plaintiff was illegally incarcerated, confined, and held against her will or consent in a DOCCS Attica prison cell for twenty-three (23) days, from approximately September 12, 2018 to October 4, 2018 - severely restricting her movement, exercise, communication, programming, mental health care & treatment, activities of daily living (ie: showering, socializing with others in a meaningful way, exercising, etc).

43.) Plaintiff's conditions of confinement while unlawfully incarcerated at Attica in DOCCS were unconstitutional, heinous, shocking, repulsive, repugnant to the conscience of society, and imposed in a manner that was "atypical" manner that imposed a "significant hardship" upon the Plaintiff in relation to "ordinary incidents of prison life" - and most certainly in relation to the ordinary conditions and incidents of life in a NYSOMH psychiatric hospital like CNYPC, and but for defendants' unlawful actions the Plaintiff would not have suffered the above harm and injury.

## STATEMENT OF CLAIM

44.) At all relevant times herein, Defendants were "persons" for the

purposes of 42 USC § 1983, and acted under color of state law to deprive Plaintiff of her constitutional rights, as set forth more fully below

## CLAIM COUNTS

44.) COUNT ONE (1): Failure to Protect - US Const. Amend. 8 (Cruel/Unusual);

45.) COUNT TWO (2): Denial of Equal Protection of the Law,

   a.) US Const. Amend. 14;

46.) COUNT THREE (3): Denial of Equal Protection - US Const. Amend 14

47.) COUNT FOUR (4): Unlawful Imprisonment - US Const. Amend. 8 & 14.

## PRAYER FOR RELIEF

48.) Plaintiff requests an order declaring that the Defendants have acted in violation of the United States Constitution.

49.) Plaintiff requests compensatory, and punitive, damages in an amount of no less than: Three Hundred Thousand Dollars ($300,000.00) - to be determined by the Court, or a duly impaneled jury.

Dated:

September 3, 2021

Signed, and sworn to, under penalty and pain of perjury:

_____
Sara Gabriella Kielly
Pro Se - Plaintiff

[ * THIS COMPLAINT HAS BEEN VERIFIED, PLEASE SEE NEXT PAGE * ]

<u>V E R I F I C A T I O N</u>
( " Kielly v. Virkler, et al. )

COUNTY OF WYOMING)
STATE OF NEW YORK) ss.:

I, Sara Gabriella Kielly (#12-b-3915), affirm under penalty, and pain of perjury, the following:

1.) I am the Plaintiff in the within aciton;

2.) I have read the forgoing complaint, and know the contents thereof;

3.) The same is true to my own knowledge, except as to those matters therein stated to be alleged under information and belief - and as to those matters, I believe them to be true;

4.) The grounds for my belief as to all matters not stated upon my knowledge are my personal knowledge, involvement in the matters, and the documents in my custody;

5.) I have reviewed each evidentiary document appended thereto, and said documents are authentic and true to my own knowledge. Upon information and belief, these documents have not been altered by any other party or actor in any manner that would change the meaning, intent, or force of the documents;

6.) This verification is signed under penalty of perjury as a "declaration of verification", rather as a notarized "affidavit" - due to the fact that I could not obtain access to a duly authorized notary via NYS Dept. of Correc. & Comm. Sup. at this time, due to no fault of my own. I understand that my statements, and affirmations, within this declaration are a binding, and sworn, statement - and if any of my affirmations are found to be willfully false I can be penalized persuant to law.

SIGNED, AND SWORN TO, UNDER
PENALTY AND PAIN OF PERJURY,
PERSUANT TO LAW:

Dated:

September 3rd, 2021

Sara Gabriella Kielly (#12-B-3915)
Plaintiff - Pro Se